UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

WARREN RATCHFORD,

Plaintiff,

v.                          6:11-cv-107

THE FEDERAL DEPOSIT INSURANCE
CORPORATION as RECEIVER for
FIRST SOUTHERN BANCORP d/b/a
FIRST SOUTHERN NATIONAL BANK;
and MID-ROC, LLC,

Defendants.

### ORDER

### I.     INTRODUCTION

For Warren Ratchford, the undeveloped subdivision "Tranquility on the South Newport" might more aptly be named "Montezuma's Revenge[1] on the Marsh." Consequently, the Court finds itself evaluating the FDIC's Motion for Summary Judgment on Ratchford's claims surrounding his vacation home there. ECF No. 23. Because the Court agrees with the FDIC that all claims against that agency either fail on their merits or are barred by the D'Oench[2] doctrine, the Court **GRANTS** summary judgment in favor of the FDIC.

### II.    JURISDICTION

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as any civil action to which the FDIC is a party arises under the laws of the United States. *See* 12 U.S.C. § 1819(b)(2)(A). Neither party contests personal jurisdiction or venue, and allegations sufficiently support both.

### III.   STANDARD OF REVIEW

"Summary judgment is appropriate when the record evidence, including depositions, sworn declarations, and other materials, shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)).[3] All evidence and factual inferences, however, must be viewed "in the light most favorable to the non-moving party," and "all reasonable doubts" resolved in his favor. *Id.* Nevertheless, should the moving party meet its initial burden to point out the absence of evidence supporting an essential element on which the non-moving party bears the burden of proof, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[1] *See Montezuma's Revenge*, THE PHRASE FINDER, http://www.phrases.org.uk/meanings/montezumas-revenge.html (defining term as the upset stomach travelers often fall victim to during trips to foreign countries).

[2] *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942).

[3] Counsel for both parties cited a superseded version of Rule 56 in their initial briefs. *See* ECF Nos. 24 at 6; 30 at 5. Although those errors make no substantive difference in this case, the Court cautions counsel to cite the most recent version of the Federal Rules of Civil Procedure. Sloppiness is unbecoming of licensed attorneys.

## IV.   BACKGROUND

In March 2006, First Southern National Bank ("Bank") loaned money to Mid-Roc, LLC to develop a parcel of land in McIntosh County, Georgia into "Tranquility on the South Newport," a forty-five acre subdivision. ECF No. 24 at 2. The Bank thereafter recorded its "Deed to Secure Debt reflecting that transaction . . . in . . . McIntosh County, Georgia Superior Court Records" on September 1, 2006. ECF No. 24-1 at 3, 13.

Mid-Roc then developed the planned subdivision "in conjunction with and with the cooperation, direction and association of [the Bank]." ECF No. 30-1 at 1. A year later, Mid-Roc recorded protective covenants for the subdivision without consulting the Bank. ECF No. 24 at 2-3. And less than a week after Mid-Roc recorded the covenants, Ratchford purchased, and still owns, a one acre lot in the subdivision from Mid-Roc. ECF 30-1 at 1.

Prior to the lot purchase, Mid-Roc and the Bank made several promises to Ratchford: (1) that his lot would be increased in size; (2) that a community dock and walkway would be constructed to facilitate access to a deep water dock; (3) that a pool, clubhouse, and storage facility would be built, as shown in advertisements for the subdivision; and (4) that during construction of the amenities, Ratchford would have right of access to an existing dock and boathouse on an adjacent lot not part of the Tranquility subdivision. *See id.* at 2-4. In July 2008, Mid-Roc reduced to writing and subsequently recorded the promise of access to the neighboring lot in exchange for Ratchford giving up his right to build a private dock. *Id.* at 2-3, 6; ECF No. 30-6.

Mid-Roc and the Bank also promised prior to closing to provide a potable water supply and fire protection to Ratchford's lot. ECF No. 30-1 at 3. The Bank alone "guaranteed the existence of sufficient capital reserves from the development loan . . . to complete the projects as described in the various advertising brochures." *Id.* That advertising, although lacking any facial indication of the Bank's involvement in its production, "[was] formulated by agents for [the Bank] and approved by [the Bank]." *Id.*

Ratchford, in addition to the written agreements and contracts, relied on all of these promises when he purchased his lot. *Id.* at 4. At closing, and after the Bank reiterated all of the promises outlined above, Ratchford paid $500,000 to the Bank for the release of its security interest in the land, and $50,000 to an auctioneer hired at the Bank's direction. *Id.*

In 2008, after "establishing full occupancy of the residence," Ratchford "determined that the water system was . . . a health hazard." *Id.* at 5. Ratchford's "determination" in fact stemmed from the exposure of him and his guests "to water which contained organisms which caused sickness." *Id.* at 9. He then "obtained the services of the McIntosh County Fire Department to flush all lines and remove all stale water." *Id.* Importantly, the Bank's officers knew that the water system did not work. *Id.* Ratchford continues to have the

2

fire department flush the water lines at least twice a year. *Id.*

Mid-Roc ultimately abandoned plans to develop the subdivision and defaulted on its loan with the Bank. ECF No. 24 at 5. Unsurprisingly, the Bank foreclosed on the property, not as individual lots, however, but as unimproved acreage *Id.* Only Ratchford's parcel escaped the foreclosure.

Ratchford believes the nature of the Bank's foreclosure is illegal and motivated by the Bank's desire to: "circumvent the requirements contained in the covenants[;]" hide the foreclosure by advertising unimproved land instead of a partially completed subdivision; chill the foreclosure sale; avoid transferring the subdivision's internal roads to McIntosh County so as to "purposefully prevent" Ratchford from obtaining appraisals or financing of his property; cut off Ratchford's rights to the dock; to avoid fines under Georgia law for operation of the subdivision's derelict water system; and to disguise the misuse of development loan proceeds "so as to allow [the Bank] to pay interest for other projects of Mid-Roc." ECF No. 30-1 at 7-8.

After the foreclosure, the Bank attempted to prevent Ratchford from accessing the dock and boathouse by blocking the path from his property to the dock and by placing "no trespassing" signs at the entrance to the path. *Id.* at 8. The Bank also neglected the property generally and failed to maintain the water system. *Id.* at 9. For some time, Ratchford maintained the well and water system at his own expense, as well as the roads of the subdivision. *Id.* 9-10.

Ratchford originally filed this action in Effingham County State Court on November 16, 2010. ECF No. 1-1 at 2. He filed an amended complaint three months later asserting claims of breach of contract, promissory estoppel, misrepresentation, and negligence. ECF No. 1-3 at 29-31. Ultimately the case ended up in Bulloch County Superior Court because venue was improper in Effingham as to the Bank. ECF No. 24 at 5.

Then, on August 19, 2011, the Georgia Department of Banking and Finance closed the Bank and appointed the FDIC as receiver. *Id.* The FDIC removed the case to this Court. *Id.* This Court remanded to Bulloch County, but the Eleventh Circuit reversed, returning the case here in October 2012.

The FDIC filed the present motion in December 2012, asserting under the *D'Oench* doctrine that all Ratchford's claims fail as a matter of law. *Id.* at 1. Even if the *D'Oench* doctrine does not apply, argues the FDIC, 12 U.S.C. § 1821(j) bars all of the equitable relief Ratchford requests. *Id.* at 2. Finally, the FDIC asserts that Ratchford's claims fail on their merits. *Id.* at 2.

The Court agrees that Ratchford's breach of contract, misrepresentation, and negligence claims fail on the merits. It therefore need not address the FDIC's statutory defenses as to those claims. The Court also agrees that the *D'Oench* doctrine acts to bar Ratchford's promissory estoppel claim.

3

## V. ANALYSIS

The Court addresses Ratchford's claims on their merits in the following order: breach of contract, misrepresentation, and finally, negligence. The Court then turns to Ratchford's promissory estoppel claim and why the *D'Oench* doctrine bars it. Before discussing the claims themselves, however, the Court must make a brief detour and resolve the Bank's contention that Ratchford failed to adhere to Local Rule 56.1 and thus admitted the Bank's Statement of Undisputed Material Fact ("SUMF") in its entirety. *See* ECF No. 33 at 2.

### A. Local Rule 56.1

The Bank, citing an unpublished Eleventh Circuit opinion applying the *Northern* District of Georgia's Local Rule 56.1, argues that Ratchford, "as the party opposing summary judgment, failed to respond to the Motion with the statement required under Local Rule 56.1." *Id.*

The *Southern* District of Georgia's Local Rule 56.1 states:

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, *in addition to the brief,* there shall be annexed to the motion a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof. . . . All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted *unless controverted by a statement served by the opposing party.*

(emphasis added).

The Bank is correct that "[w]here the party responding to a summary judgment motion does not directly refute a material fact set forth in the movant's Statement of Material Facts . . . or otherwise fails to state a valid objection to the material fact . . . such fact is deemed admitted by the respondent." *Futch v. Chatham Cnty. Detention Ctr.*, No. CV410-192, 2012 WL 1557336, at *2 (S.D. Ga. May 2, 2012) (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009)) (admitting the movant's SUMF without opposition); *see also Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008); *Williams v. Slack*, 438 F. App'x 848, 850 (11th Cir. 2011). But that does not describe how Ratchford responded to the present motion.

All of the cases cited above are distinguishable from this case. Unlike here, where Defendants have filed a response brief, the plaintiff in *Futch* "filed neither any response to Defendants' [SUMF] nor a brief in opposition to the motion for summary judgment." *Futch*, 2012 WL 1557336, at *3. Without any response whatsoever, in a brief or otherwise, of course the court in *Futch* deemed the SUMF admitted. *Id.*; *see also In re Brown*, 488 B.R. 810, 812 (Bankr. S.D. Ga. 2013) (deeming admitted a moving party's SUMF where the non-movant failed to file any response at all).

And the Eleventh Circuit cases all dealt with the Northern District of Georgia's Local Rule 56.1, not the Southern District's. *See Mann*, 588 F.3d at 1303; *Reese*, 527

4

F.3d at 1266; *Williams*, 438 F. App'x at 849. Whereas the Northern District's LR 56.1 explicitly requires non-moving parties to file a responsive brief and an individually numbered response to the movant's SUMF, the Southern District of Georgia's LR 56.1 only requires the SUMF be "controverted by a *statement* served by the opposing party." *Compare* N.D. Ga. L.R. 56.1, *with* S.D. Ga. L.R. 56.1 (emphasis added). Furthermore, the Southern District rule internally distinguishes between what it requires of movant's and respondents' statements. Movants must file a SUMF "in addition to the brief," but respondents' requirements include no similar language. S.D. Ga. L.R. 56.1.

This District's rule does not define what constitutes a "statement," nor can the Court locate a case doing so. Absent more direct guidance, the Court declines to import the Northern District's language requiring of such a statement individually numbered responses to a SUMF. To the extent that Ratchford's response brief and attached exhibits controvert the Bank's SUMF, the Court will not deem the SUMF admitted. On the other hand, if Ratchford has submitted nothing to controvert a particular fact in the SUMF, that individual fact is established as a matter of law. With its detour complete, the Court now returns to its regularly scheduled assessment of the merits of Ratchford's claims.

### B. Breach of Contract

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Norton v. Budget Rent A Car Sys. Inc.*, 307 Ga. App. 501, 502 (2010). "A breach occurs if a *contracting party* . . . fails to perform the engagement as specified in the contract . . . ." *UWork.com, Inc. v. Paragon Techs., Inc.*, --- S.E.2d ---, 2013 WL 1286682, at *5 (Ga. Ct. App. Mar. 29, 2013) (emphasis added). In other words, to assert a claim for breach of contract, the party against whom the claim is brought must have been a party to the contract. *Id.*

Ratchford asserts that he entered into a contract "with Defendants" that obligated "Defendants to fund the development of the infrastructure and amenities for the [subdivision], to allow [Ratchford] and his guests access to the dock and boathouse, to uniformly enforce the covenants of the subdivision, and to maintain services for the [subdivision] such as potable water and fire protection." ECF No. 1-3 at 29-30. Ratchford further asserts that the Bank breached that contract by "failing to fully fund the infrastructure and amenities, preventing [Ratchford] and his guests from accessing the dock or boathouse . . . and failing to maintain potable water and fire protection." *Id.* at 29-30.

If supported by evidence, those allegations would make out a claim for breach of contract sufficient to survive summary judgment. But Ratchford has presented no evidence of any contract between himself and the Bank. Contracts exist in the record between Ratchford and Mid-Roc, *see* ECF No. 30-6, and between Ratchford and the auction company that sold the property. *See* ECF No. 30-2. No evidence shows any contract between Ratchford and the Bank as required for the

5

breach claim to survive. *See UWork.com*, 2013 WL 1286682, at *5. Ratchford has failed to establish a genuine dispute of this claim and it therefore fails as a matter of law.

### C. Misrepresentation

Ratchford appears to plead both fraudulent and negligent misrepresentation. ECF No. 1-3 at 30-31 (stating that the Bank "knew or should have known" the alleged misrepresentations were false). Putting aside issues surrounding Ratchford's potentially inadequate pleading, *see* Fed. R. Civ. P. 9(b) (requiring that "a party must state with particularity the circumstances constituting fraud"), both claims fail on the merits.

Fraudulent misrepresentation has five elements. Ratchford must show that (1) the Bank made false representations; (2) the Bank knew the representations were false at the time they were made; (3) the Bank made the representations intending to deceive Ratchford and induce him to rely on the representations; (4) Ratchford justifiably relied on the representations; and (5) the representations resulted in damages to Ratchford. *See Grand Master Contracting, L.L.C. v. Lincoln Apartment Mgmt. Ltd. P'ship*, 314 Ga. App. 449, 451 (2012).

Ratchford claims that the Bank made misrepresentations as to his access to the community dock and boathouse; that potable water and fire protection would be provided; and that the Bank would hold sufficient funds back from the development loan to construct infrastructure and amenities in the subdivision. ECF No. 1-3 at 30-31. And Ratchford argues in his response brief that his affidavit demonstrates the Bank knew those representations to be false at the time it made them. *See* ECF No. 30 at 9-10 (citing paragraphs 4, 8, 9, 10, 16, 17 of the Ratchford affidavit). But Ratchford grossly distorts the evidence in his own affidavit.

Even assuming Ratchford established every other element of fraudulent misrepresentation, he fails to show that the Bank knew its representations were false at the time they were made. Paragraphs 4, 8, 9, 16, and 17 of his affidavit do not show knowledge of falsity. At most they serve as evidence of Ratchford's reliance and the existence of false representations by the Bank. *See, e.g.*, ECF No. 30-1 at ¶ 4, 8, 9. Paragraph ten goes a bit further and avers that the Bank knew that the well on Ratchford's property "[was] not in compliance with the requirements of Georgia law . . . at the time" the well failed to work. *Id.* at ¶ 10. But that still does not show the Bank told Ratchford it would provide potable water knowing that representation to be false. It merely shows the Bank knew the well broke. The knowledge in those situations is not the same. And only one—knowledge of the falsity of the representation about potable water—would serve to establish an element of fraudulent misrepresentation. Ratchford, by presenting no evidence of the Bank's knowledge of falsity, therefore fails to establish a genuine dispute of fact regarding fraudulent misrepresentation by the Bank.

He also fails to establish negligent misrepresentation. "The essential elements of negligent misrepresentation are (1) the defendant's negligent supply of false information to foreseeable persons . . . (2)

6

such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Hendon Props., LLC v. Cinema Dev., LLC*, 275 Ga. App. 434, 439 (2005). As Ratchford failed to show fraud, so too does he fail to show a genuine dispute of fact regarding the Bank's "*negligent* supply of false information." *Id.* (emphasis added).

Ratchford introduces no evidence to show that the Bank negligently made any of the alleged representations. He alleges the falsity of the representations multiple times, *see, e.g.*, ECF No. 30 at 9, 11, but never how or why the representations were made negligently. The closest Ratchford gets is in his first amended complaint, where he makes the conclusory allegation that the Bank "should have known" the representations to be false. But such a statement is not enough to state a claim for negligent misrepresentation, much less survive a motion for summary judgment. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions") (internal quotations omitted).

As Ratchford fails to establish a genuine dispute of fact as to (1) the Bank's knowledge of falsity at the time of the representations; and (2) the Bank's negligence in making the representations, his misrepresentation claim, whether fraudulent or negligent, must fail as a matter of law.

### D. Negligence

To show negligence, one must establish that the defendant had (1) a duty that they (2) breached; and that the breach (3) caused the plaintiff (4) injury. *See Rasnick v. Krishna Hospitality, Inc.*, 289 Ga. 565, 566 (2011). No need exists to go any further than the first element because Ratchford fails to establish that the Bank owed him a duty.

Ratchford argues that the Bank had a duty to provide his residence clean water, "or at least inform him that it would no longer be doing so." ECF No. 30 at 9. He also alleges the Bank owed duties to provide fire protection, "and to exercise good faith and reasonable care in conducting its administration, development, and foreclosure of the subdivision." ECF No. 1-3 at 31.

To support the claimed duties, Ratchford cites only to *Everhart v. Rich's, Inc.*, 229 Ga. 798 (1972), a products liability case in which the court held that a seller has a duty to warn a purchaser if a product has the potential to do harm during normal or intended use. *Id.* at 802. Although good law, such a rule is of no aid in deciding this case. It speaks not at all to any duty the Bank may have had to provide Ratchford potable water or fire protection.

Ratchford does, however, correctly note that the Bank had a duty to conduct the foreclosure in good faith. *See* ECF No. 1-3 at 31; *Racette v. Bank of Am., N.A.*, 318 Ga. App. 171, 174 (2012). And he makes three relevant allegations[4] supporting his

---

[4] Ratchford actually states nine separate reasons he believes the Bank foreclosed as it did. *See* ECF No.

7

contention that the foreclosure occurred in bad faith. First, Ratchford avers the Bank "purposefully hid[] the foreclosure on the entire subdivision by placement of legal ads describing only unimproved acreage which was not, in fact, in existence at the time of the foreclosure." ECF No. 30-1 at 7. Second, he avers the Bank acted "to chill the foreclosure sale by failing to adequately describe the property as it existed." *Id.* Finally, Ratchford makes the general averment that the Bank "foreclosed, not on the subdivision lots as separate parcels, but, rather, on the real property as a whole and as a tract of acreage only." ECF No. 30-1 at 6.

The choice by the Bank to foreclose on the land as one parcel simply does not constitute foreclosure in bad faith. The covenants did not bind the Bank because, as the FDIC notes, Mid-Roc recorded the covenants subdividing the land *after* the Bank's security interest attached. *See* ECF No. 24-1 at 3-5 (noting that the deed to secure the Bank's investment was recorded almost eight months before the subdivision covenants were recorded on May 4, 2007); *Springmont Homeowners Ass'n, Inc. v. Barber*, 221 Ga. App. 713, 713 (1996) (holding that a bank's interest was not subject to restrictive covenants because the bank took title before the covenants were recorded).

And the alleged descriptive failures by the Bank in its legal notice of foreclosure, while perhaps supportive of a negligent foreclosure claim by Mid-Roc, do not support Ratchford's negligence claim. In fact, Ratchford had no legal interest in the foreclosure sale sufficient for standing to assert a negligent foreclosure claim. *See Canton Plaza, Inc. v. Regions Bank, Inc.*, 315 Ga. App. 303, 308 (2012) (holding that only holders of security deeds foreclosed upon are proper plaintiffs in wrongful foreclosure claims); *DeGolyer v. Green Tree Servicing, LLC*, 291 Ga. App. 444, 448 (2008) (holding that only the *debtor* may sue for wrongful foreclosure when a grantee forecloses not in good faith).

No matter the allegations, Ratchford cannot demonstrate standing to assert negligent foreclosure. And he presents no evidence of other duties the Bank owed. Ratchford therefore cannot raise a genuine dispute of fact sufficient to preclude summary judgment on his negligence claim. That claim fails as a matter of law.

### E. Promissory Estoppel

In the same count as his breach of contract claim, Ratchford makes what the Court construes as an inartful attempt at pleading a claim for promissory estoppel. *See* ECF No. 1-3 at 29. Ratchford alleges that he "reasonable relied on" the Bank's "promises that it would" (1) fund infrastructure and amenities in the subdivision; (2) allow Ratchford and his guests to access the dock and boat ramp; and (3) uniformly enforce the subdivision's covenants and maintain services such as potable water. *Id.* at 29-30.

---

30-1 at 7-8. But seven of those either relate to covenants inapplicable to the Bank's interest in the property, *see id.* at 7 ¶ a. & b., or are conclusory allegations incapable of avoiding summary judgment. *See, e.g., id.* at 7 (averring that the Bank foreclosed to avoid transferring roads to McIntosh County so as to "purposefully prevent" Ratchford from obtaining financing for his property).

8

But the substance of Ratchford's claim is of no import because the *D'Oench* doctrine and 12 U.S.C. §1823(e)[5] bar the claim. In *D'Oench*, the Supreme Court held that agreements "outside the documents contained in [a] bank's records would not operate as a defense against suit by the FDIC [or its successors] on a note acquired from a failed bank." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citing *D'Oench*, 315 U.S. at 459. 12 U.S.C. § 1823(e) is the statutory counterpart to D'Oench and triggers the same analysis. *See id.* at 593; *Baumann v. Savers Fed. Sav. & Loan Ass'n*, 934 F.2d 1506, 1515 (11th Cir. 1991). The "rule that has emanated" from *D'Oench* and § 1823(e) is:

> In a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records.

*Baumann*, 934 F.2d at 1515.

Ratchford seeks to enforce precisely the type of agreements barred by *D'Oench* and § 1823(e). Construing the evidence in the light most favorable to Ratchford, as it must, *see Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013), the Court assumes that the Bank in fact did agree with Ratchford to provide potable water and fire service; fund infrastructure and amenities; and allow Ratchford to access the boat ramp and dock. But that same evidence provides no indication the Bank executed the agreements in writing, much less that the Bank's board of directors approved them, or that they are part of the official records of the Bank.[6] *See* 12 U.S.C. §1823(e)(1)(B)-(D).

---

[5] Section 1823(e) provides:
(1) In general. No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section . . . either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement –
  A. is in writing,
  B. was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
  C. was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
  D. has been, continuously, from the time of its execution, an official record of the depository institution .
  . . .

[6] Ratchford suggests a letter complaining about the water and other issues at the subdivision constitutes an official record of the Bank sufficient to give notice of the agreement. *See* ECF No. 30 at 13. Even if that is true, the letter still does not constitute an agreement sufficient to satisfy §1823. Among other deficiencies, the Bank never signed the letter and there is no indication the Bank's board ever approved of the letter. 28 U.S.C. §1823(e)(1)(B)-(C). That it may have provided the Bank, and the FDIC, notice that Ratchford had issues with the Bank's handling of the subdivision foreclosure, § 1823 requires more for something to be an agreement enforceable against the FDIC as receiver for a failed institution.

9

No genuine issue of fact exists as to whether Ratchford and the Bank had an agreement as defined by § 1823(e). Any argument to the contrary ignores the plain language of the statute.[7] Accordingly, Ratchford's promissory estoppel claim fails as a matter of law.

## VI. CONCLUSION

Warren Ratchford, like many property owners in the mid to late 2000's, caught the wrong end of a real estate purchase. Like few property owners, however, a financial institution failure injected the FDIC into the mix mid-litigation. In part because of that complication, and in part regardless of it, all of Ratchford's claims fail. His breach of contract, misrepresentation, and negligence claims fail on the merits, while his promissory estoppel claim dies on the vine thanks to § 1823(e) and the *D'Oench* doctrine.

So, the Court **GRANTS** the FDIC's motion for summary judgment. All Ratchford's claims against the FDIC are *DISMISSED*.

This 23 day of May 2013.

*/s/ B. Avant Edenfield*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[7] For example, Ratchford argues that the Bank having an insurance policy means his claims cannot diminish the FDIC's interest in any of the Bank's assets in derogation of § 1823(e) and *D'Oench*. *See* ECF No. 30 at 12. But Ratchford cites no cases to support that proposition and the Court sees no reason to reconsider its previous rejection of this very argument. *See, e.g., Lokey v. FDIC*, No. 4:11-cv-146, 2012 WL 1100789, at *6 (S.D. Ga. Mar. 30, 2012).

10